UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONDA L. HOWARD,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

HONORABLE PAUL L. MALONEY

Case No. 1:14-cv-1207

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Ronda Howard seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 48 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 125, 136). She completed high school and was previously employed as a hospital cleaner. (Tr. 150, 166). Plaintiff applied for benefits on January 30, 2012, alleging that she had been

disabled since July 20, 2009, due to torn triangular fibrocartilage, defect in cartilage overlying articular surfaces, contrast within distal radioulnar jointl abnormality involving scapholunate ligament, contrast present within mid carpal row, fibrocartilage torn and other abnormalities. (Tr. 175, 256–62). Plaintiff's application was denied on May 8, 2012, after which time she requested a hearing before an ALJ. (Tr. 190–96). On July 1, 2013, Plaintiff appeared with her counsel before ALJ Rebecca LaRiccia for an administrative hearing, with testimony from Plaintiff and a vocational expert (VE). (Tr. 145–72). In a written decision dated August 15, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 125–44). Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–7). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ LaRiccia determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 130). At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairment: triangular fibrocartilage tear of the left wrist with ulnar impaction, status post surgeries. (Tr. 130). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 132). At the fourth step, the ALJ found that Plaintiff

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), however, the claimant cannot climb ladders, ropes or scaffolds, can only occasionally crawl, balance, kneel, crouch, crawl [sic], stoop or climb ramps/stairs, can frequently (but not repetitively) perform handling with the left non-dominant upper extremity, cannot reach overhead with the right upper extremity, and should avoid exposure to work hazards and dangerous moving machinery.

(Tr. 133). The ALJ also found at the fourth step that Plaintiff could not perform any of her past relevant work. (Tr. 136).

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations.[2] *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 14,600 jobs[3] which an individual similar to Plaintiff could perform. (Tr. 167). These included the positions of cafeteria attendant, information clerk, and housekeeping cleaner. (Tr. 167). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 20, 2009 (the alleged onset date) through August 15, 2013, (the date of the decision). (Tr. 138).

## DISCUSSION

Plaintiff's Statement of Errors raises the following claims.

1. The ALJ committed reversible error by not properly weighing the evidence.

2. The ALJ committed reversible error by making an improper assumption about Plaintiff's credibility.

(Dkt. #14, PageID 993). The Court will discuss the issues below.

---

[2] The Court notes that the nonexertional limitations as presented to the VE at the hearing do not exactly mirror the limitations as determined in the RFC. For example, the hypothetical posed to the VE stated that the hypothetical claimant could frequently balance, stoop, kneel, and crouch. (Tr. 166). Plaintiff's RFC, on the other hand, found that she could only perform those activities occasionally. (Tr. 133). Plaintiff has failed to raise this issue, however, and has thus waived the argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.").

[3] The VE stated that the region in which these jobs existed was the lower two-thirds of Michigan's lower peninsula. (Tr. 167).

1. **Medical Opinions**

Plaintiff alleges that she is entitled to relief because the ALJ failed to properly assess the opinions expressed by Dr. Donald Condit, Dr. Stephen Montes, and Dr. David Nadeau. Plaintiff further argues the ALJ erred in her treatment of Dr. Jose Ruiz, a state agency medical consultant. The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Sers.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

It is undisputed that doctors Condit and Nadeau qualify as treating physicians. Thus, in giving the opinions less than controlling weight, the ALJ must "give good reasons" for doing so.

*Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

### A.   Dr. Condit.

During the time period at issue, Dr. Condit met with Plaintiff on several occasions and twice imposed restrictions on the use of Plaintiff's left hand in preparation for surgeries. (Tr. 449, 532). The restrictions on the use of Plaintiff's left hand included light work only, wearing a brace, and lifting no more than five pounds. Following both surgeries, the restrictions were lifted. (Tr. 512, 504). At no point did any of the restrictions imposed by Dr. Condit last for a year. At Plaintiff's last visit with Dr. Condit on January 31, 2011, the doctor released Plaintiff from the restrictions, noting "[a]t this point we will leave follow-up to [Plaintiff's] discretion. I see no reason for work restrictions. She will continue with the home exercise program." (Tr. 504). Plaintiff did not see Dr. Condit again. In developing Plaintiff's RFC, the ALJ gave the January 31, 2011, opinion "some weight" noting that he "treated the claimant, performed both surgeries, and was in the best position to express an opinion on the condition of the claimant's left wrist impairment." (Tr. 136).

While the ALJ did not give "good reasons" for only giving the January 31, 2011, opinion "some weight," the Defendant argues Dr. Condit's opinion is less restrictive than the

7

Plaintiff's RFC. Plaintiff concedes as much in her reply brief, but nonetheless argues the ALJ erred in treating the doctor's opinion. (Dkt. #18, PageID 1013). As noted above, The Sixth Circuit recognizes a procedural right to "good reasons" for discounting a treating physician's medical opinion. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, "a violation of the good reasons rule can be deemed to be 'harmless error' if (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, or (3) where the Commissioner has met the goal of § [416.927(c)(2) ] ... even though she has not complied with the terms of the regulation." *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 940 (6th Cir. 2011).

The analysis here is somewhat complicated because Plaintiff does not specify which opinion of Dr. Condit is entitled to controlling weight. To the extent Plaintiff argues that the January 31, 2011, opinion is entitled to controlling weight, by conceding that the opinion is less restrictive than the RFC, Plaintiff also concedes that the second above exception applies. To the extent Plaintiff argues the restrictions that were imposed in preparation for surgery should have been given controlling weight, the Court concludes that remand would be futile. *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)) ("When 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'"). Even if the restrictions were given controlling weight, they do not amount to a *continuous* twelve month period that, even if prohibiting Plaintiff from substantial gainful activity, would qualify Plaintiff for benefits. *See* 20 C.F.R. §§ 404.1509, 404.1522(b). Accordingly, Plaintiff's claim of error regarding Dr. Condit will be denied.

*B. Dr. Montes*

Plaintiff next argues that the ALJ erred in failing to give controlling weight to the opinion of Dr. Montes. (Dkt. #18, PageID 1014). This argument is deemed waived, however, because it was made for the first time in Plaintiff's reply brief. Raising a new argument in her reply brief is improper, and constitutes a violation of the Court's order directing the filing of briefs. (Dkt. # 12). It is well established that a reply brief is not the proper place to raise new arguments. *See e.g., Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). "A reply brief is the plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief. A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments." *Morris v. Comm'r of Soc. Sec.*, No. 1:11–cv–154, 2012 WL 4953118, at *10 n.8 (W.D.Mich. Oct.17, 2012). Plaintiff's claim is thus waived.

Even if Plaintiff had not waived this argument, however, Plaintiff's claim would fail as Dr. Montes did not establish a treating relationship with Plaintiff. As such, the ALJ was only required to "consider" Dr. Montes opinion. *See* 20 C.F.R. § 404.1527. This is not a demanding standard, and was met here. (Tr. 134).

*C. Dr. Nadeau*

On June 18, 2013, Dr. Nadeau completed a medical source statement regarding Plaintiff's physical RFC. Among other things, Dr. Nadeau found that Plaintiff could only occasionally lift and carry up to ten pounds, and could never lift or carry heavier weights. (Tr. 898). Dr. Nadeau further opined that Plaintiff could only sit, stand, or walk for fifteen minutes without interruption, sit for a total of three hours in an eight-hour workday, and stand and walk for one hour

9

during the workday. (Tr. 899). Regarding the use of hands, Plaintiff could only occasionally use her right hand to reach, and could frequently use her right hand to handle, finger, feel, push, and pull. The doctor opined that Plaintiff's use of her left hand was further restricted than her right, and could only occasionally reach, handle, finger, and feel with her left hand. Moreover, Plaintiff could never use her the left hand to push or pull. (Tr. 900). The ALJ discounted the opinion on the ground that it was inconsistent with the doctor's treatment notes, as well Dr. Nadeau's earlier opinion that Plaintiff could work without restrictions. (Tr. 135). The ALJ also noted it was inconsistent with the opinion of Dr. Condit. (Tr. 135). This is determination is supported by substantial evidence as Dr. Nadeau's treatment notes do not reveal findings which support the opinion in question. (Tr. 676–726, 753–768, 868–96). Moreover, it is inconsistent with his January 2011 opinion that stated Plaintiff could return to work with the restrictions Dr. Condit imposed. (Tr. 608). Plaintiff's argument is, therefore, rejected.

In this section of Plaintiff's initial brief, Plaintiff also attempts to introduce evidence that was not before the ALJ, and argues in her reply brief that because Defendant did not object, the evidence should be considered.[4] (Dkt. #18, PageID 1015). Plaintiff identifies no authority for this proposition, however, and Plaintiff's argument goes against the great weight of authority that holds otherwise.[5] Well-established law within the Sixth Circuit, holds that this Court must base its review

---

[4]In her initial brief, Plaintiff discusses notes about Plaintiff's treatment received after the hearing before the ALJ on July 1, 2013.

[5]Plaintiff's reference to *Cotton v. Sullivan* in his initial brief is not made in connection with any argument for a remand under sentence six. He states: "The left arm continued to be a problem, as some of Dr. Nadeau's post-hearing records indicated (96) and which were not available before the hearing–one would think that the criteria of *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir 1993), would allow this Court to consider the evidence of ongoing issues with the left arm." (Dkt. #14, PageID 994–95). Plaintiff asks the Court to review the ALJ's decision on the

10

of the ALJ's decision on the administrative record presented to the ALJ. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993); *see also Osburn v. Apfel*, No. 98–1784, 1999 WL 503528, at *4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The Court is not authorized to consider Plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

Plaintiff has not addressed, much less satisfied, her statutory burden for remanding this matter to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)."*Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 482–83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (*citing Melkonyan v. Sullivan*,

---

basis of evidence that Plaintiff never presented to her. *Cotton* and numerous other Sixth Circuit cases prohibit this Court from considering evidence that was not presented to the ALJ. *See Cotton*, 2 F.3d at 696; *see also DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 725 n.3 (6th Cir. 2014); *Jones,* 336 F.3d at 478; *Bass v. McMahon*, 499 F.3d at 513 ("There is no backdoor route to get new evidence considered for the first time at the court [ ] level; the only method to have new evidence considered is to ask for a sentence six remand under 42 U.S .C. § 405(g) [.]").

11

501 U.S. 89, 99–100 (1991)); *see Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653–54 (6th Cir.2009). The Court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence-six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. "Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. *See Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012). The Sixth Circuit has taken a "harder line." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried, her burden of demonstrating good cause. Finally, in order to establish materiality, Plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *see also Deloge v. Comm'r of Soc. Sec.*, 540 F. App'x 517, 519 (6th Cir. 2013). Dr. Naudeau's later treatment notes and other documents are not material. They do not document a worsening of Plaintiff's condition such that the ALJ would have reached a different conclusion. (Tr. 8–92, 96–124, 904–934). Plaintiff's claim of error regarding Dr. Nadeau is therefore denied.

### D. Dr. Ruiz

Plaintiff concludes this claim of error by arguing the ALJ violated the Sixth Circuit's holding in *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013) in relying on the opinion of Dr. Jose Ruiz, a non-examining physician who reviewed the record for the state disability agency and opined on Plaintiff's physical RFC. On June 21, 2012, Dr. Ruiz opined that Plaintiff could occasionally lift and carry twenty pounds. She could stand and walk for about six hours of an eight hour workday, could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and occasionally crawl. (Tr. 737–39). Plaintiff could frequently handle, and was unlimited in her ability to reach, finger, and feel. (Tr. 739). The ALJ gave the opinion "great weight," noting that Dr. Ruiz was a specialist familiar with agency regulations and policy, he had reviewed the majority of the record, and he considered the medical evidence against Plaintiff's allegations. (Tr. 136).

Plaintiff argues the ALJ's treatment of the opinion violates *Gayheart*. In *Gayheart*, the Sixth Circuit provided guidance to ALJs regarding how to assess opinions from nonexamining sources.

> [O]pinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id*. § 404.1527(c)(6).

710 F.3d at 376. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§

404.1527(e) (2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.,* 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.").

While the ALJ gave the opinion of Dr. Ruiz "great weight," there is no indication in the record that the ALJ believed the opinion was entitled to controlling weight nor that the ALJ gave the opinion controlling weight. Further, consistent with 20 C.F.R. § 404.1527(c)(6), the ALJ pointed to the specialization of Dr. Ruiz. Accordingly, the ALJ's decision to give the opinion great weight is supported by substantial evidence.

Plaintiff also argues that weight was improperly given to Dr. Ruiz because he did not review the entire record.[6] "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). Here, the ALJ discussed the notes and reports of all the doctors before making her decision. Accordingly, Plaintiff's claim lacks merit.

### 2. Credibility

Plaintiff finally argues that the ALJ's factual finding regarding her credibility is not

---

[6]According to Plaintiff, Dr. Ruiz did not review Dr. Montes' report. Of course, the ALJ had already discussed Dr. Montes' report, giving it no weight because the report was not supported by the medical evidence in the record and conflicted with the evidence in the record. Furthermore, the ALJ noted that Dr. Montes did not have access to "pertinent non-medical evidence," which Dr. Ruiz considered. (Tr. 135.)

14

supported by substantial evidence. (Dkt. #14, PageID 995–96). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs*., 833 F.2d 589, 592 (6th Cir. 1987). The Court does not make its own credibility determinations. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed ...." *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey*, 987 F.2d at 1234.

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers*, 486 F.3d at 248. The *Rogers* court observed that Social Security Ruling 96–7p requires that the ALJ explain her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

15

The ALJ found that Plaintiff's testimony regarding her subjective functional limitations was less than fully credible. (Tr. 135–36). The ALJ also noted that the medical evidence in the record did not support Plaintiff's allegations.[7] Plaintiff argues that the ALJ committed error because she found that Plaintiff's credibility was undermined by her receipt of unemployment benefits during the period she claims to have been disabled. The record shows that after filing for disability, Plaintiff collected unemployment benefits. (Tr. 263–266, 290–91). The ALJ found that this was a factor undercutting her claims. (Tr. 136) (noting that the certification Plaintiff made regarding her ability to work in order to receive unemployment compensation was inconsistent with a claim for disability). It was appropriate for the ALJ to draw an adverse inference regarding Plaintiff's credibility from his application for and receipt of unemployment benefits during the period she claims to have been disabled. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) ("Applications for unemployment and disability are inherently inconsistent."); *see also Loyacano v. Comm'r of Soc. Sec.*, No. 1: 13–cv–144, 2014 WL 1660072, at * 5 (W.D. Mich. Apr.25, 2014) (collecting cases).

The Court is not persuaded by Plaintiff's citation to ALJ Cristaudo's memorandum nor the opinion from the Michigan Court of Appeals. "Although ALJ Cristaudo noted that an application for unemployment benefits is not necessarily inconsistent with a claim for social security benefits, he specifically observed that an application for unemployment benefits is evidence that the ALJ 'must consider,' together with the totality of the circumstances.*" Reilly v. Comm'r of Soc. Sec.*, No. 1:13-CV-1096, 2015 WL 1459509, at *2 (W.D. Mich. Mar. 30, 2015). Similarly, while *Ross*

---

[7]To the extent that there is evidence in the record for a doctor to support Plaintiff's claim, the ALJ had explained why that evidence was afforded no weight.

*v. Acrisure* held that receipt of social security disability benefits does not necessarily preclude a plaintiff from receiving unemployment benefits, it made no reference to how concurrent applications for unemployment and disability benefits might impact credibility findings. *Ross v. Acrisure P1, LLC,* No. 315347, 2014 WL 3973380, at *5 (Mich. Ct. App. Aug.14, 2014). Accordingly, Plaintiff's claim of error will be denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.

Dated: December 9, 2015 /s/ Paul L. Maloney
PAUL L. MALONEY
United States District Judge